IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID N., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-CV-1371-SMY |
| | ) |
| KILOLO KIJAKAZI, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff David N.[1] seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Social Security ("SSI") benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB on November 17, 2016, alleging a disability onset date of September 20, 2016 (Tr. 17, 163).[2] His claim was initially denied on February 27, 2019 (Tr. 14-36) and denied for review by the agency's Appeals Council on March 6, 2020. Thus, the ALJ's decision is the final agency decision subject to judicial review (Tr. 1).

Plaintiff filed a Complaint in federal court and this Court issued an order reversing and remanding the case for rehearing and reconsideration of the evidence (Tr. 427-443). Following

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and its Advisory Committee Notes.

[2] Plaintiff also filed for supplemental security income on June 12, 2020 (Tr. 392), but as the "processes of evaluation are identical," the Court need not conduct separate analyses of whether the ALJ properly found that the Plaintiff was not disabled under either his DIB or SSI application. *Craft v. Astrue*, 539 F.3d 668, 647, n.6 (7th Cir. 2008).

rehearing, the ALJ issued an unfavorable decision dated May 31, 2022 (Tr. 367-400). Pursuant to 20 CFR § 404.984, that decision of the ALJ became the final decision of agency, and Plaintiff filed the instant lawsuit.

## Issues Raised by Plaintiff

Although not explicitly identified in Plaintiff's brief, it appears that he raises the following issues for judicial review:

1. The ALJ erred in assessing Plaintiff's mental work abilities.
2. The ALJ erred by failing to reasonably address the Plaintiff's subjective symptoms demonstrating his borderline intellectual functioning.

## Legal Standard

To qualify for disability insurance benefits, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability.

The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## **Decision of the ALJ**

Upon remand, the ALJ reconducted its analysis of whether Plaintiff was disabled and followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date of September 20, 2016, despite earning money while working as a part-time delivery driver (Tr. 373). He found that Plaintiff had the severe impairment of borderline intellectual functioning (Tr. 373) but concluded that he did not have an impairment or

combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. Part 404 (Tr. 375). The ALJ also conducted an analysis under Listing 12.05 as to whether Plaintiff suffers from an Intellectual Disorder and found that his IQ of 84 was too high to be considered as disabled on this basis (Tr. 378-379).

The ALJ concluded as follows regarding Plaintiff's Residual Functional Capacity ("RFC"):

> The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Can perform only simple, routine and repetitive tasks, requiring only simple work-related decisions with few changes in the routine work setting.

(Tr. 380)

The ALJ considered the opinions of four state agency reviewing psychologists (Tr. 385-387). The ALJ also considered and discussed at length the findings of two psychological consultative examiners, Dr. Frederic Golden, PhD. and Stephen G. Vincent, PhD. (Tr. 387). The ALJ ultimately concluded that Plaintiff was not disabled because based on his ability to perform work at all exertional levels that is only compromised by nonexertional limitations, he is able to perform his past job as a dishwasher (Tr. 389); alternatively, Plaintiff is capable of performing other work that exists in significant numbers in the national economy, including industrial cleaner, dining room attendant, and machine packager (Tr. 391).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff was born in 1970 and was 46 years old on the alleged onset date of September 20, 2016 (Tr. 72-73). He filed for disability based on "IQ of 81, needs constant management, HBP, and high cholesterol"[3] with a primary diagnosis of "borderline intellectual functioning" (Tr. 90-91).

### Evidentiary Hearings

The ALJs conducted two evidentiary hearings – once initially and again on remand. Plaintiff was represented by counsel at his first hearing on November 27, 2018 (Tr. 37) and testified to the following:[4] Plaintiff has a social worker to manage his day-to-day life and only obtained his jobs through family or friends who were open to providing accommodations and redirections (Tr. 42). Plaintiff has an apartment that he pays rent for. He works as a delivery driver by using his own car to deliver medication to hospice patients and individuals in the Alton area (Tr. 44, 46). Upon examination by the ALJ, Plaintiff testified that he successfully worked as a dishwasher at Golden Corral and worked doing part delivery at an auto shop as well (Tr. 49-50).

---

[3] Plaintiff's brief focuses on alleged errors by the ALJ with respect to Plaintiff's borderline intellectual functioning. Accordingly, this decision will not discuss Plaintiff's alleged high cholesterol and high blood pressure.
[4] Plaintiff's counsel indicated that his main issue on disability was his borderline intellectual functioning and that his sister and brother-in-law were present to testify to that as well (Tr. 41).

Plaintiff's sister testified to the following: Plaintiff had worked in the past and could continue doing so with "multiple prompts a day," as long as there were no more than "two-step directions" (Tr. 57); Plaintiff particularly struggled with hygiene more than cognitive functioning (Tr. 57); Their parents raised them to be as independent as possible but Plaintiff has some behavioral issues as well that may preclude employment (Tr. 61); and Plaintiff is involved in his church (Tr. 66).

Vocational Expert Tyra Watts ("VE") testified that Plaintiff could no longer perform his past work based on his limitations of being able to "understand and remember no more than short and simple instructions and [being] limited to attending to and carrying out simple/routine tasks" (Tr. 69). On questioning by the ALJ, the VE clarified that Plaintiff could perform the jobs of raker, stringer, and picking table worker, all of which exist in significant numbers in the national economy (Tr. 69-70).

Plaintiff was once again represented by counsel at his hearing on remand on May 17, 2022 (Tr. 931). His counsel asserted that Plaintiff's "inability to basically, independently perform activities, the amount of supervision, the redirection that he would require at a job would not be conducive to competitive full-time employment" (Tr. 941).

Plaintiff testified that he has lived alone at the same apartment for about 20 years (Tr. 942). After filing for disability in 2016, he worked at Golden Corral and a banquet center (Tr. 945). He has also worked for the same delivery service since 2017 (Tr. 944). He works about 20 hours a week (Tr. 946). At Golden Corral, he worked as a dishwasher and maintenance guy, performing tasks that included washing dishes, scrubbing pots and pans, cleaning the bathroom, and emptying the trash (Tr. 949). Plaintiff described working as a delivery driver for an auto parts store when he delivered parts to different garages (Tr. 950).

Upon examination by the ALJ, Plaintiff described working as a delivery driver: he works alone and tends to go to the same nursing homes and assisted living places to deliver medicine; he uses the GPS to determine the coordinates (Tr. 953-955); if he was offered to do this on a full-time basis, it would be difficult because he would be stressed by the additional workload (Tr. 956).

Plaintiff's sister testified to the following: Plaintiff had recently been evicted from his apartment because he started using the bathtub and bathroom floor to relieve himself, resulting in the apartment becoming uninhabitable (Tr. 970); Plaintiff has issues with self-direction, and his current boss knows the customers' addresses, has entered them into his GPS, and calls him frequently to make sure the job is going well (Tr. 973); at previous jobs, Plaintiff had oversight, explicit directions, and checking in from supervisors (Tr. 974); Plaintiff can microwave foods and sometimes completes laundry on his own (Tr. 976); Plaintiff has bad hygiene (Tr. 979).

VE Jennifer Larue also testified (Tr. 981). In response to the ALJ's hypothetical question whether Plaintiff could work as a dishwasher, she stated yes, if he could perform "only simple, routine and repetitive tasks, requiring only simple work-related decisions with few changes in the routine work setting" (Tr. 983). She clarified that a dishwasher is considered unskilled work and such workers can only be off task 15 percent of the time (Tr. 985).

**Relevant Medical Records**

On February 25, 2015 and March 9, 2015, Plaintiff had psychological consultations with Frederick Golden, Ph.D. in Wood River, Illinois (Tr. 259). Dr. Golden administered the Wechsler Adult Intelligence Scale – Revised and noted that he, "Achieved a Verbal IQ score of 83, a Performance IQ score of 86, and a resultant Full Scale IQ score of 84" (Tr. 259). In

his opinion, this would allow Plaintiff to "[function] intellectually at the upper limited of the Borderline range" (Tr. 259). Dr. Golden further found that, "[Plaintiff] attained an Overall Adaptive Behavior Age Equivalent of 9 years, 9 months, and a corresponding ICAP Service Level score of 8. The latter indicates the need for limited personal care and/or regular supervision" (Tr. 259). Dr. Golden concluded that Plaintiff had intellectual and cognitive deficits, including "vocabulary, arithmetic, sequencing, and perpetual motor functioning" (Tr. 259).

On March 8, 2017, Plaintiff had a psychological consultation with Stephen G. Vincent, Ph.D. Dr. Vincent had reviewed Dr. Golden's psychological evaluation. His consultation lasted 41 minutes (Tr. 340) during which he administered a series of tests, including asking Plaintiff to identify the current and former President of the United States, asking Plaintiff to identify three large cities, and prompting Plaintiff to count up and down (Tr. 341). Dr. Vincent noted, "During the examination, although somewhat concrete with his responses, he was able to respond appropriately, but responses were slow and deliberate, many times answering in a question-like form due to fear of failure and exposure of cognitive weaknesses" (Tr. 342). His diagnostic impression was that Plaintiff had "borderline intellectual functioning" (Tr. 342).

### State Agency Consultants' Opinions

Three state agency reviewing psychologists opined that Plaintiff's borderline intellectual functioning were non-severe and any allegations were "not consistent with the claimant's ability to function generally well from day to day": Howard Tin, Psy.D (Tr. 77), David Cochran, Ph.D. (Tr. 87), and Lionel Hudspeth, Psy.D. (Tr. 412). The ALJ concluded that "the record overall supports greater limitations in functioning [than those three psychologists]" (Tr. 385-386).

The fourth psychologist, Erika Gilyot-Montgomery, Psy.D., opined that Plaintiff was limited to simple, one-to-two step tasks and low workplace changes and pressures due to his borderline IQ and adaptive functions delays (Tr. 451-455). She noted, "Per 3rd party statement, [Claimant] does better with additional supports" (Tr. 455).

The ALJ also considered the Function Report-Adult of social worker Marie Cavasher (not a state consultant) (Tr. 633-640). Cavasher reported that Plaintiff "tends to hide or minimize difficulties understanding and/or following direction, especially on multi-step tasks. He also hides or denies problems he may encounter in work environments and denies having problems with housekeeping or personal hygiene" (Tr. 642).

## Discussion

Courts must not "substitute [their] judgment for the ALJ's when considering the weight of the evidence, and [a plaintiff] must do more than point to a different conclusion that the ALJ could have reached." *Jones v. Astrue*, 623 F.3d 1155, 1162. Here, the Court finds that the ALJ's evaluation of the relevant evidence set forth in his 23-page decision was sufficient. While Plaintiff had some limitations, the ALJ reasonably concluded that those limitations did not preclude Plaintiff from performing all work.

The ALJ adequately supported his RFC determination by considering all limitations supported by the evidence, including Plaintiff's own statements regarding his abilities and daily activities (Tr. 954-959, 964-965), his ability to work as a part-time delivery driver for a pharmacy and dishwasher for Golden Corral (Tr. 944-945, 957-958, 964-965), his performance on psychological testing that indicated his IQ was 84 (the "upper limit" of borderline intelligence) (Tr. 376), medical opinion evidence from psychologists and state agency doctors, and the testimony of Plaintiff's sister (Tr. 973-979). The ALJ properly

considered the totality of this evidence in arriving at the assessed RFC of being capable of performing simple, routine repetitive tasks (Tr. 380). Plaintiff's focus on his need for a supportive environment is unavailing. See, *Albert v. Kijakazi*, 34 F.4th 611, 613-615 (7th Cir. 2022).

Moreover, the ALJ reasonably discussed and formulated his RFC based on the cognitive and mental limitations that two psychologists, Dr. Vincent and Dr. Golden, noted. The ALJ detailed Dr. Vincent's observations and testing results before concluding, "This evidence shows that the [Plaintiff] is able to comprehend, follow rules, understand, retain information for future use, focus, pay attention and complete tasks, indicative of a moderate limitation in functioning" (Tr. 377).

The ALJ balanced Dr. Golden's various findings that Plaintiff had intellectual deficits in memory, learning, self-direction, and adaptive skills with Plaintiff's ability to respond to all test inquiries and establish rapport with Dr. Golden (Tr. 376). This ultimately led the ALJ to conclude that, "The claimant has not presented persuasive evidence to support more than a moderate limitation in functioning in this area" (Tr. 376).

While the ALJ did not explicitly address Plaintiff's behavior age equivalent of 9 years, 9 months noted in Dr. Golden's report, the ALJ was not required to discuss every piece of evidence in the record. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). Instead, the ALJ properly discussed similar evidence in the report with respect to Plaintiff's mental capabilities, including Plaintiff's Service Level score of 9 and Dr. Golden's observations that Plaintiff functioned independently and was not developmentally disabled (Tr. 387).[5]

---

[5] Plaintiff asserts that "[The] ALJ failed to explain what type of non-conservative treatment is indicated for borderline intellectual functioning," but the ALJ noted that Plaintiff had not shown that he had belonged to a program or attended

Plaintiff's reliance on *Taylor v. Colvin*, 829 F.3d 799 (7th Cir. 2016) is misplaced. The *Taylor* plaintiff had a lower IQ and more severe limitations that precluded her from living alone and she needed assistance to perform tasks such as getting dressed. The ALJ reasonably considered the fact that Plaintiff independently performed personal grooming, took his medications without assistance, and worked part-time as a delivery driver using GPS to complete his job duties (Tr. 258).

While Plaintiff argues the ALJ should have addressed Dr. Gilyot's opinion that he does better with additional supports or that Plaintiff needs a social worker, these were generalized statements and did not amount to specific work restrictions that the ALJ needed to consider. Moreover, as Plaintiff acknowledges, the ALJ addressed these opinions and found them inconsistent with Plaintiff's ability to work part-time at a job requiring self-management skills and a GPS to find unfamiliar locations while working (Tr. 384). The ALJ also found that Dr. Gilyot's opinion was not supported by the overall evidence: "Likewise, the limitation to one and two step tasks is not supported by the evidence overall, as both the consultative examiners noted that despite some intellectual deficits, the claimant was reasonable articulate and able to complete most of the requested tasks" (Tr. 387).

There is no basis to overturn the ALJ's subjective symptom evaluations. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). The ALJ evaluated the varied testimony regarding Plaintiff's ability to function, particularly from his sister and social worker Cavasher, and nevertheless found that Plaintiff could perform his past work as a dishwasher. *Id.* Plaintiff

---

classes for people with specific needs (Tr. 382). Plaintiff also intermittingly met with a social worker, but Plaintiff's sister admitted, "[she] was not sure if the claimant was actually even on their caseload or eligible for services" (Tr. 382).

devotes a significant portion of his brief to highlighting contradictory testimony from Plaintiff's sister and social worker (Doc. 22, pp. 9-16), which could militate in favor of a finding of disability, but the ALJ weighed their testimony and concluded, "The claimant's sister and/or the claimant also acknowledged that the claimant is able to follow specific instructions to complete a task (such as laundry), that he did not require reminders to take his medication, go to work, or attend appointments, and he was able to use GPS to obtain directions . . . . Simply stated, the claimant's actions and admission reveal that he is not as limited as alleged" (Tr. 384). *Jones*, 623 F.3d at 1162. In discounting the testimony of Plaintiff's sister and social worker, the ALJ also assessed the weight to give their testimony and ultimately decided they were "not acceptable medical source[s]," with "observations [that] are based on upon casual observations . . . rather than objective medical testing" (Tr. 388).

## Conclusion

After careful review of the record, the Court finds that ALJ's findings are supported by substantial evidence and that he committed no errors of law. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

DATED: September 26, 2023

**STACI M. YANDLE**
**United States District Judge**